

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00009-CR

_____


STANTON WAYNE YATES, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1525082


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

Stanton Wayne Yates was charged with five counts of engaging in organized criminal activity (a first degree felony) with the underlying offense of burglary of a habitation (a second degree felony).[1] In a single trial, Yates was found guilty by a jury of four counts of engaging in organized criminal activity and one count of burglary of a habitation. He was sentenced to concurrent life sentences for each of the first degree felonies, and he received a concurrent twenty-year sentence and a $10,000.00 fine as punishment for the second degree felony. Yates has appealed, alleging that it was error for the trial court to not have given the jury an accomplice-witness instruction regarding one of the witnesses and also maintaining that there was insufficient evidence to sustain his convictions.

We find that no accomplice-witness instruction was required and that there was sufficient evidence to sustain Yates' conviction. However, we modify the judgment to delete the assessment of attorney fees. Accordingly, we affirm the conviction, as modified.

## I.     Background

Yates' criminal activities screeched to a halt on June 6, 2015, when a Collin County Sheriff's Deputy detained a vehicle in an investigation of a reported residential burglary that had been committed in Farmersville, Texas.[2] Perry Yates (the appellant's brother who was initially charged with driving a vehicle with no license to drive) was the driver of the vehicle, and Yates

---

[1]Yates filed separate appeals from his five convictions. Each conviction stems from a separate indictment. Our opinions in Yates' companion appeals, styled *Stanton Wayne Yates v. The State of Texas*, cause numbers 06-16-00010-CR, 06-16-00011-CR, 06-16-00012-CR, and 06-16-00013-CR, are issued of even date herewith.

[2]Farmersville is located in Collin County, Texas; however, all of the offenses at issue in this appeal were alleged to have occurred in Hopkins County, Texas.

2

was the sole passenger in the vehicle. A subsequent search of the vehicle revealed various items, including tools, jewelry, Tramadol, and a pistol.

The State introduced evidence from five burglaries.

The first Hopkins County burglary alleged to have been committed by Yates occurred in 2014 on New Years' Eve at the home of Brenda Campbell.[3] Campbell testified that she returned to her home at about 5:30 p.m. to discover that her back door had been forcibly removed. Upon this discovery, Campbell went to the gun cabinet to retrieve her pistol, and her husband went to the closet where he kept his loaded Glock 9mm pistol in a dresser drawer. Both were gone. In the drawer where Campbell's husband had kept his pistol, he found a walkie-talkie radio that belonged to neither of the house's occupants. Campbell contacted law enforcement officers and their personnel arrived approximately thirty to forty-five minutes later. A subsequent search revealed that there were additional items missing: six necklaces, a wedding ring, two gold bracelets, earrings, $250.00 in cash, and one silver dollar.

Sandra Vickers, a neighbor of the Campbells, had first noticed a red pickup truck in the Campbells' driveway and later saw an older model navy blue SUV in front of the Campbell house, observing it to leave and then return at a time she estimated to be in the early afternoon.

The second reported burglary of a residence came to light on February 5, 2015, at the home of Timothy Henderson.[4] At that time, Henderson's wife (thinking that Henderson had hidden her jewelry as a joke) asked him about its whereabouts. Henderson and his wife then discovered that

---

[3]The Campbell burglary formed the basis of the State's indictment contained in our cause number 06-16-00011-CR.

[4]The Henderson burglary formed the basis of the State's indictment contained in our cause number 06-16-00012-CR.

3

all of Henderson's wife's jewelry and $1,000.00 in cash were missing from the lockbox in their home. Searching further, they also noticed that three class rings and a championship football ring were likewise inexplicably gone. Henderson explained that his missing class ring was made of solid gold, contained a light blue birthstone, and had been inscribed with the words "Sulphur Springs High School," his nickname "Timbo," the year "2002," a baseball symbol, and a picture of a cross and a Bible. Various other jewelry was also missing.

In relation to the Henderson home burglary, the State introduced business records from Greenville Gold & Silver, of Greenville, Texas, and the affidavit of its proprietor, Archie Anderson. The records reflected twenty-one transactions between January 26, 2015, and May 29, 2015, with Stanton W. Yates or Perry Yates as the sellers. The records also showed that on January 30, 2015, "Yates, Stanton W." had sold to Greenville Gold & Silver a ring described as "Timbo 2002 Ring."

The third home burglary mentioned by the State was on February 7, 2015, at the home of the John Gammill family.[5] Gammill returned home in the early afternoon to discover that his back door had been forcibly opened and was ajar. He immediately discovered that four of his guns (a Springfield Armory XDM 9mm pistol, a Uberti remake of a Henry rifle, a Weatherby 22-250, and a Remington Model 7 .243) were missing and that his wife's jewelry box had been rummaged through. Gammill also found a pill on his porch (later found to be a Tramadol) that did not belong to him or to any of his family members.

---

[5]The Gammill burglary formed the basis of the State's indictment contained in our cause number 06-16-00013-CR.

During Gammill's testimony, the State offered, over no objection, an affidavit in support of business records from Hunt County Guns and Ammo wherein it was indicated that the unique Uberti rifle and the Springfield Armory XDM 9 mm pistol having serial numbers matching those belonging to Gammill had been sold by Yates to Hunt County Guns and Ammo.

The next burglary mentioned occurred on April 28, 2015, at the Kinworthy home.[6] Katie Kinworthy testified that her husband detected something amiss when he came into the house the afternoon of the burglary, discovering their "outside" dog within the house. After the Kinworthys consulted, they determined that some unauthorized person had been in the house. A search revealed that the couple was missing a Smith & Wesson pistol, a piggy bank, and a jar used as a bank containing between $500.00 and $800.00. They also determined that Kinworthy's gold jewelry and Nikon digital camera in a black case were missing. During Kinworthy's testimony, the trial court admitted a business records affidavit from B6UP Pawn & Gun Shop, along with a pawn shop ticket reflecting the name "Yates, Stanton Wayne" as the seller of "1-Nikon Camera[] (in black case)."

The fifth burglary described during the State's case occurred on June 3, 2015, at the home of Glenn Hahn.[7] Hahn had first noticed a dresser drawer open in his home, which led him to believe someone had been inside the house. After initially having found nothing missing, the Hahns dismissed that fear. However, three days later, Hahn's wife discovered that her .380 Smith & Wesson Bodyguard pistol (serial number EAL3345) was gone. This prompted a more thorough

---

[6]The Kinworthy burglary formed the basis of the State's indictment contained in our cause number 06-16-00010-CR.

[7]The Hahn burglary formed the basis of the State's indictment contained in the instant cause.

5

search, which revealed that lockboxes in the Hahns' closet had been broken into and a large amount of bonds and about $600.00 had been purloined from them. Hahn also revealed that his wife had a prescription bottle containing painkillers and that he believed the medication had been taken from the home as well.

A.J. Jumper, an investigator assigned to the Criminal Investigations Unit of the Collin County Sheriff's Office, executed a warrant authorizing the search of a tan Chevrolet Blazer in which Perry and Yates had been riding at the time of their arrest. This search turned up (among other things) several pieces of jewelry in an envelope and a case, some inscribed with names other than Yates' or Perry's; an Equate aspirin bottle containing Tramadol hydrochloride (a prescription pain killer), a prescription bottle with Yates' name on it containing hydrocodeine; a .380 Smith and Wesson Bodyguard pistol, serial number EAL3345, with a loaded magazine, and its black case; and items that could be used to forcefully burglarize locked premises, such as a Stanley precision claw bar[8] and a hammer.

At trial, Perry testified that he and Yates had committed between twenty and twenty-five burglaries in Hopkins County. Perry stated that he and Yates generally used walkie-talkies when they first began their burglary spree, but that Yates lost one of them, so they began using their cell phones. Perry testified that he drove Yates to at least twenty to twenty-five homes whereupon Yates would enter the residence, Perry would leave the location and subsequently return in order to retrieve Yates. Perry stated that he had observed Yates get out of the automobile, go toward a

---

[8]Carmen Stogsdill's house, located in Collin County, had been burglarized. Jumper took the claw bar and the hammer to Stogsdill's home to determine whether either of the items matched the indentations on the doorjamb of the home. Jumper testified that the claw bar matched the pattern that had been left on the doorjamb of the Stogsdill home.

residence, and then return with items that he did not previously have in his possession (such as jewelry, money, and guns). Perry testified that Yates had purchased a navy blue 2004 Chevy Blazer sports-utility vehicle (SUV) in Greenville and that it was this vehicle they used when they first began their burglaries in Hopkins County. However, that vehicle was repossessed, and the brothers were forced to use a different vehicle for their means of transportation, the second vehicle being tan in color.

Perry admitted that Yates had once had a class ring with an inscription that read "Timbo" and that he saw Yates take the ring to a Greenville, Texas, jewelry shop owned by Anderson. In explaining Anderson's role, Perry explained that in the beginning, Yates did not trust Anderson enough to sell stolen class rings containing inscriptions on them, but that eventually, he began to sell easily identifiable jewelry to Anderson. When the State asked Perry if Anderson could remove the inscriptions in order to make rings "untraceable," Perry begrudgingly answered that he could.

When the State showed Perry records from Hunt County Guns & Ammo, he agreed that he was the person who had taken the Armory XDM 9mm pistol to the store and sold it. He also admitted that he never owned the gun and that it had been stolen from someone's home. Perry acknowledged that B6UP Pawn & Gun Shop records showed Yates' name as being the person who sold a Nikon camera to the shop. Perry testified that he was not present when Yates signed any of the documents associated with the sale of the stolen items.

Additionally, Perry acknowledged that he and Yates were known to use prescription-strength painkillers, including Tramadol. He stated that Yates had a prescription for painkillers,[9] and he admitted that Yates had a "problem" with prescription drugs. Perry also admitted that when the pair ran out of pain pills, they would burglarize homes in an effort to obtain them.

Perry also testified that their relationship with Anderson was informal and that they had never directly told him of the source of the jewelry they sold to him. However, Perry testified that he told the investigators that he believed Anderson knew the jewelry was stolen, but stated, "I can't speak for him. I mean, it's obvious."

Anderson testified that he had been in the business of buying and selling gold since the 1980s and that he had purchased jewelry from Yates about twenty times over the two years previous to Yates' arrest. He also said that he had paid the brothers over $20,000.00 in purchasing jewelry from them in the period between January 26, 2015, and May 29, 2015. After Anderson purchased the gold rings and jewelry, he sold them to a metals refiner, who would usually melt them down within a week or so. Although he admitted it was not his normal business practice, Anderson acknowledged that he had given Yates a type of acid that could be used to determine whether a piece of jewelry consisted of "real gold."

When asked if he was "suspicious" of the brothers' activities over the four-month period, he responded that he had "zero" suspicion. Anderson maintained that Yates told him he and Perry "had a route of sellers that they were buying [jewelry] from."

---

[9]Perry stated later that he did not believe Yates had a prescription for Tramadol or any other prescription-strength medicine.

In addition, Anderson conceded that he had purchased a firearm from Yates (a Ruger .357), but he explained that the purchase took place outside of the shop and was for his own personal use. Anderson said that he had failed to inform the policemen that he had also purchased a Sig Sauer Mosquito pistol from Yates (a gun that had been stolen by the brothers). Anderson maintained that he was just "innocent and trusting" and denied ever having told Yates that he knew of a process in which he could remove the inscriptions from class rings. Anderson admitted that he had an agreement with Yates and Perry that they would "take over" his business, that he would train them, and that the three of them would share the profits from the business.

## II.   Discussion

### A.   The Accomplice-Witness Jury Instruction

Yates contends that he was entitled to an accomplice-witness jury instruction as to Anderson and that the trial court erred in failing to include the instruction in its jury charge. The State takes the position that although Anderson was, indeed, a member of the combination who collaborated in carrying out criminal activities, "he was not legally culpable of the object offenses of [b]urglary of a [h]abitation either directly or under the law of the parties." We concur with the State's assessment of this issue.

### 1.   Standard of Review and Applicable Law

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially, we determine whether an error occurred and then "determine whether sufficient harm resulted from the error to

9

require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see also Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). The degree of harm required for reversal depends on whether the appellant preserved error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). When no proper objection was made, as in this case, the error requires reversal only in the event it was so egregious and created such harm that the accused has not had a fair and impartial trial. *Almanza*, 686 S.W.2d at 171 (op. on reh'g).

Article 38.15 of the Texas Code of Criminal Procedure states, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). An accomplice is someone who participates with the defendant before, during, or after the commission of the crime and acts with the necessary culpable mental state. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Kunkle v. State*, 771 S.W.2d 435 (Tex. Crim. App. 1986). To be considered an accomplice witness, the witness' participation with the defendant must have involved some affirmative act that encouraged the commission of the offense of which the defendant is charged. *Paredes*, 129 S.W.3d at 536.

A witness is not considered an accomplice merely because he knew of the offense and did not disclose it, or even if he concealed it. *Kunkle*, 771 S.W.2d at 439. Moreover, merely being present at the scene of the crime does not render that witness an accomplice witness. *Druery*, 225 S.W.3d at 498. Complicity with the accused in the commission of another offense separate from

10

the charged offense does not make a person an accomplice. *Id*. In sum, "if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law." *Id*.; *Paredes*, 129 S.W.3d at 536. When the evidence is conflicting and it remains unclear whether the witness is an accomplice, the trial court should allow the jury to determine whether the witness is an accomplice witness as a matter of fact under an instruction defining the word "accomplice." *Id*. However, there must be some evidence of an affirmative act on the witness' part to assist in the commission of the charged offense before such an instruction is required. *Kunkle*, 771 S.W.2d at 440.

### 2. Analysis

Yates maintains that both Perry and Anderson were accomplice witnesses, requiring an instruction as to each of them.[10] Yates points out that the State, in its closing argument, referred to Perry and Anderson as accomplices. Yates argues,

> The State's indictments and prosecutorial theory at trial was that Archie Anderson had an ongoing agreement, prior to the commission of the burglaries, with Appellant and Perry Yates that he would purchase the stolen jewelry from them and melt the jewelry down to make it untraceable. No other individual was alleged or identified as being a member of the "combination" or as having a separate agreement with Appellant and Perry Yates to engage in criminal activities. Because the combination was the same for each offense charged, the jury would be required to find Mr. Anderson to be an accomplice in order to find Appellant guilty of Organized Criminal Activity.

Yates argues that Anderson must be considered an accomplice, or otherwise, a "combination" would not exist due to lack of participants.

---

[10]The trial court included an accomplice-witness instruction as to Perry.

11

A combination is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (West 2011). However, even though there is a requirement that there be three persons involved in a combination, there is no requirement that all three members of the combination participate in the underlying offense. In fact, it is not a defense to prosecution that the evidence shows a third person did not commit the object offense. *See* TEX. PENAL CODE ANN. § 71.03 (West 2011).[11] The result, then, is that a person may be a member of a combination without being considered responsible for, or an accomplice to, the object offense.

From the evidence presented at trial, a reasonable jury could have found that Yates and Perry had an agreement with Anderson that they would burglarize homes and then sell the stolen items to Anderson, who would in turn resell them to his customers. There is no evidence, however, that Anderson was present during any of the burglaries, that he was involved in the planning of them, or that he encouraged Perry and Yates to commit them. In fact, there is no evidence that

---

[11]Section 71.03 states,

> It is no defense to prosecution under Section 71.02 that:
>
> (1)     one or more members of the combination are not criminally responsible for the object offense;
>
> (2)     one or more members of the combination have been acquitted, have not been prosecuted or convicted, have been convicted of a different offense, or are immune from prosecution;
>
> (3)     a person has been charged with, acquitted, or convicted of any offense listed in Subsection (a) of Section 71.02; or
>
> (4)     once the initial combination of three or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter.

TEX. PENAL CODE ANN. § 71.03.

12

Anderson even knew when the burglaries occurred. That Anderson purchased the items from Yates and Perry does not result in a finding that Anderson was an accomplice to the burglaries (this being a necessary prerequisite to charging Anderson with engaging in organized criminal activity with the object offense of burglary of a habitation). Anderson would not be an accomplice even if he had been aware that the items he purchased were the fruits of burglaries. The commission of a different "downstream" offense, even with knowledge of the prior criminal act charged against the defendant, will not suffice to warrant a finding of an accomplice. *See Carrillo v. State*, 591 S.W.2d 876 (Tex. Crim. App. [Panel Op.] 1979), *overruled on other grounds*, *Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988). In short, one can be a member of a combination without being an accomplice and that is exactly what Anderson's role was in this case.

Yates also contends that Anderson could have been charged as a "party" to the offense pursuant to Section 7.02 of the Texas Penal Code, which states, in part,

> (a) A person is criminally responsible for an offense committed by the conduct of another if:
>
> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense, . . . .

*See* TEX. PENAL CODE ANN. § 7.02 (West 2011). In order to prove that a person is a party to the offense of engaging in organized criminal activity, the evidence must demonstrate that the defendant possessed the mental state required for commission of the underlying offense. *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). Moreover, the evidence would have to show that

13

at the time of the offense, the individual was contributing in some part towards its execution. *Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref'd). While the jury was free to infer that Anderson knew the jewelry he purchased from Yates and Perry had been stolen, there was no evidence that Anderson promoted, solicited, encouraged, directed, aided, or attempted to aid Yates in the commission of burglaries. Thus, there is absolutely no evidence showing that Anderson contributed in any way to the underlying offense of burglary of a habitation.

In addition, Yates contends that Anderson could have been charged with the offense of criminal conspiracy arising from the commission of the burglaries. Section 15.02 of the Texas Penal Code states,

> (a)     A person commits criminal conspiracy if, with intent that a felony be committed:
>
> (1)     he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>
> (2)     he or one or more of them performs an overt act in pursuance of the agreement.

*See* TEX. PENAL CODE ANN. § 15.02 (West 2011). In this case, the record contains no evidence showing that Anderson agreed or conspired with Yates or Perry in an effort to burglarize the homes.[12]

---

[12]"Since the offense of conspiracy requires both greater proof and carries a greater punishment, it is neither a lesser nor an included offense of engaging in organized criminal activity . . . ." *Gibbons v. State*, 794 S.W.2d 887, 890–91 (Tex. App.—Tyler 1990, no pet.).

There was no necessity for the trial court to include an accomplice-witness instruction in its jury charge in reference to Anderson either as a matter of law or as a matter of fact.[13] We overrule Yates' first point of error.

## B. Sufficiency of the Evidence

Arguing that Anderson's testimony was accomplice testimony, Yates maintains the nonaccomplice evidence is insufficient to support the jury's guilty verdicts. The State responds that Anderson should not be considered an accomplice, but even if this Court considered him as such, the remaining nonaccomplice evidence provides sufficient corroboration to support the convictions.

Because we have already found that Anderson was not an accomplice to the offenses alleged in the indictment against Yates, his testimony need not be corroborated by additional evidence. For the reasons below, we find the evidence sufficient to support the trial court's judgments of conviction.

### 1. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). This standard is the same in cases of direct evidence and circumstantial evidence. *Jones v. State*, 229 S.W.3d 489, 496 (Tex. App.—

---

[13]Because we find no error, we find it unnecessary to conduct a harm analysis. *See Abdnor,* 871 S.W.2d at 731–32.

Texarkana 2007, no pet.) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*,

323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction

of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443

U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by

a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by

the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict

the State's theories of liability, and adequately describes the particular offense for which the

defendant was tried." *Id*.

### 2. Analysis

The State charged Yates in all five indictments with engaging in organized criminal activity

with the object offense of burglary of a habitation. The trial court instructed the jury,

> In each indictment, the state accuses the defendant of having committed the
> offense of engaging in organized criminal activity. Specifically, the accusation is
> that the defendant, with the intent to establish, maintain, or participate in a
> combination or in the profits of a combination, committed the offense of burglary
> of a habitation.
>
> . . . .
>
> To prove that the defendant is guilty of organized criminal activity, the state
> must prove, beyond a reasonable doubt, two elements. The elements are that—

16

> 1. the defendant committed the offense of burglary of a habitation; and

> 2. the defendant did this with the intent to establish, maintain, or participate in a combination or in the profits of the combination.

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation and commits or attempts to commit a felony, theft, or an assault. TEX. PENAL CODE ANN § 30.02(a)(3) (West 2011).

There is no reason to restate the summary of the evidence of the five burglaries for which evidence was given at trial. The evidence is ample to support the jury's conclusion.

As the State correctly points out, Yates asks this Court to review each case "in a vacuum and to disregard the evidence of the other four cases as well as the evidence of the Collin County burglary admitted under Rule 404(b)." Extraneous-offense evidence of other crimes, wrongs, or acts may not be admitted at trial in order to show the defendant acted in conformity with bad character. TEX. R. EVID. 404(b). Extraneous-offense evidence, if relevant apart from proving character conformity, may be admitted for other purposes: to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Although evidence of other crimes, wrongs, or acts may have a tendency to show character conformity, extraneous-offense evidence that has relevance apart from character conformity, such as rebuttal of a defensive theory, may be admissible. *Id.*

We agree with the State that, had it chosen to try the offenses in five separate trials, the evidence of each of the other four burglaries and the Collin County burglary would have been admitted pursuant to Rule 404(b) of the Texas Rules of Evidence in order to show identity and

17

common scheme or plan.[14] Moreover, Yates incorrectly presumes our analysis takes into consideration the trial court's failure to include an accomplice-witness instruction relating to Anderson, thereby, requiring corroboration of Anderson's testimony. As we have already discussed, there is no need for such an instruction as to Anderson, and there was no requirement that the State corroborate his evidence. On the other hand, Perry was undoubtedly an accomplice witness for the State, and the trial court correctly included the accomplice-witness instruction in its charge to the jury.[15] Perry's testimony was adequately corroborated.

However, Article 38.14, known as the accomplice-witness rule, does not require the nonaccomplice evidence to be sufficient by itself to establish the accused's guilt beyond a reasonable doubt. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Likewise, it is not

---

[14]The trial court adequately instructed the jury as to the extraneous evidence as follows:

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictments. The state offered the evidence to show the identity of the defendant as the person who is alleged to have committed the offenses charged in these cases and any alleged common scheme or plan, and for no other reason. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.

> Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purposes I have described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to have committed the charged offenses. In other words, you should consider this evidence only for the specific, limited purposes I have described. To consider this evidence for any other purpose would be improper.

[15]The trial court's jury instructions stated,

> A person cannot be convicted of a crime on the uncorroborated testimony of an accomplice. An accomplice is someone whose participation in the crime would permit his conviction for the crime charged in the indictment or a lesser included offense of that crime.

> Perry Jeff Yates is an accomplice to the crime of engaging in organized criminal activity, if it was committed. The defendant, Stanton Wayne Yates, therefore cannot be convicted on the testimony of Perry Jeff Yates unless that testimony is corroborated.

18

necessary for the nonaccomplice evidence to connect an accused directly to the commission of the charged offense. *Id*. "All that is required is that there be *some* non-accomplice witness evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Id*. "The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). Under the accomplice-witness rule, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Id.* (citing *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).

Here, the trial court instructed the jury as follows:

Evidence is sufficient to corroborate the testimony of an accomplice if that evidence tends to connect the defendant, Stanton Wayne Yates, with the commission of any offense that may have been committed. Evidence is not sufficient to corroborate the testimony of an accomplice if that evidence merely shows an offense was committed.

Testimony of another accomplice is not sufficient to corroborate the testimony of an accomplice. The corroborative evidence, in other words, must be from some source other than accomplices.

With the exception of the Gammill and Campbell homes, at least one item from each house was connected to Yates either by (1) business records from Anderson's shop, (2) business records from Hunt County Guns and Ammo, (3) business records from B6UP Pawn & Gun Shop, or (4) their presence in the automobile Yates was in at the time of his arrest in Collin County. As to the Gammill burglary, a Tramadol pill, not belonging to a family member, was found on the porch

19

of the Gammill home, and the State presented evidence that both Perry and Yates misused prescription medication. Moreover, officers discovered Tramadol pills that were present in the vehicle at the time Perry and Yates were arrested in Collin County. Further, Perry testified that he sold an Armory XDM 9 to Hunt County Guns and Ammo, and the acquisition records from the store verified the sale. In relation to the Campbell burglary, the Campbell's neighbor testified that she saw an older-model, blue SUV outside of the Campbell's home on the day of the burglary. Further, Perry testified that he and Yates traveled in an older-model, blue SUV when they began committing burglaries. Moreover, there was also documentary evidence from a Car Mart showing that Yates had purchased a 2004 Chevy Blazer SUV on August 25, 2014, not long before the burglaries began. Although the document did not reflect the color of the vehicle, the jury was free to infer, based on all of the evidence, that the 2004 SUV Yates purchased was the same vehicle used in the Campbell burglary and that it was the same vehicle the Campbell's neighbor saw outside of their home.

For these reasons, we find that sufficient evidence existed to support the jury's determinations that Yates committed the offense of burglary as alleged in the five indictments against him.[16]

We turn next to the elements of engaging in organized criminal activity. Section 71.02 of the Texas Penal Code states, "A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal

---

[16]We affirmed the trial court's judgment memorializing Yates' conviction of burglary of a habitation, which was appealed under our cause number 06-16-00011-CR.

street gang, the person commits or conspires to commit" one of a number of offenses, including the offense of burglary. TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2016). Intent and knowledge are fact questions for the jury and (absent a confession) are almost always proven by circumstantial evidence. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). "A jury may infer intent from any facts that tend to prove the combinations existence, including the defendant's words, acts, and conduct, and the method of committing the enumerated offense." *Arredondo v. State*, 270 S.W.3d 676, 682 (Tex. App.—Eastland 2008, no pet.) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Myers, J., concurring)).

We have already stated that a combination means three or more persons who collaborate in criminal activities, even though the participants may not know the others' identities, the membership may change from time to time, and the participants may stand in a wholesale-retailer or other arms-length relationship in illicit distribution operations. *See* TEX. PENAL CODE ANN. § 71.01(a). "'Conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." TEX. PENAL CODE ANN. § 71.01(b) (West 2011). "It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal." *Arredondo*, 270 S.W.3d at 682. However, "[p]roof of a single ad hoc effort . . . is insufficient." *Id.* "Profits" consist of any "property constituting or derived from any proceeds obtained, directly or indirectly, from an offense listed in Section 71.02," such as burglary. TEX. PENAL CODE ANN. § 71.01(c) (West 2011).

The offense of engaging in organized criminal activity requires that "the actor must not only agree to participate but must himself perform some overt act in pursuance of the agreement." *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988); *Pardue v. State*, 252 S.W.3d 690, 700 (Tex. App.—Texarkana 2008, no pet.). The overt act, though, "need not be criminal in itself," and "acts that suffice for party liability—those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense—would also satisfy the overt act element of section 71.02." *Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003).

In this case, the trial court found that Perry was an accomplice to the crime, and it included in its jury charge an accomplice-witness instruction regarding Perry.[17] Thus, it was necessary that any testimony given by Perry must have been corroborated by nonaccomplice testimony. Perry testified that he had driven Yates to multiple residences and that upon their arrival, Yates would enter the homes by way of a window or back door. Upon Yates' return to the vehicle, he would have jewelry, guns, or money in his possession that he did not previously possess. Perry explained that they would sell the items, usually on the same day they had taken them. Perry testified that Yates introduced him to Anderson and that he had known Anderson for "[s]ix months, maybe a year." Perry conceded that from January 29, 2015, to May 20, 2015, he and Yates had entered into transactions with Anderson twenty-one times. Perry admitted that eventually Yates sold jewelry to Anderson that had been inscribed, such as class rings. Perry testified that he had seen

---

[17]The trial court's instruction stated, "Perry Jeff Yates is an accomplice to the crime of engaging in organized criminal activity, if it was committed. The defendant, Stanton Wayne Yates, therefore cannot be convicted on the testimony of Perry Jeff Yates unless that testimony is corroborated."

22

Yates with the "Timbo" class ring. Perry testified that Anderson told him that he (Anderson) could remove the inscriptions on the class rings and make them untraceable.

A reiteration of all the same evidence presented by Anderson is not necessary here, but a review of it will show that Anderson's nonaccomplice testimony corroborates much of Perry's testimony.

The jury is free to believe all, part, or none of the testimony of a witness. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). Although Anderson repeatedly denied that he knew the jewelry had been stolen, a rational juror could believe that Yates and Perry would burglarize homes and that they would take the stolen items to Anderson, who would then sell the jewelry, all the while knowing the jewelry had been stolen. The result of their endeavors was that all three of the men, including Yates, profited financially.

The question is not whether this Court believes that the evidence at trial established beyond a reasonable doubt that a "combination" existed or that Yates participated in the "combination" by conspiring to commit or by committing burglary of a habitation. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt that Yates was guilty of doing so. *See Jackson*, 443 U.S. at 318–19. In viewing the evidence in the light most favorable to the verdict, we find that a reasonable jury could have concluded that these three individuals worked together in a combination; Yates and Perry would obtain the items by burglarizing homes and then Anderson would sell the items he had purchased from Yates and Perry.

23

The evidence was sufficient to support the jury's verdicts. We overrule Yates' second point of error.

## III.    Improper Assessment of Attorney Fees

The trial court assessed $2,500.00 in attorney fees against Yates in this cause only. Attorney fees cannot be assessed against an indigent defendant unless there is proof and a finding that he is no longer indigent. *Cates v. State*, 402 S.W.3d 250 (Tex. Crim. App. 2013); *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010). In this case, there is no such evidence or finding. The trial court thus erred by assessing attorney fees against Yates. The proper remedy is to modify the judgment and remove the fee award. *Cates*, 402 S.W.3d at 252; *Martin v. State*, 405 S.W.3d 944, 947 (Tex. App.—Texarkana 2013, no pet.).

Accordingly, we modify the judgment of the trial court by deleting the fee assessment against Yates for the costs of his court-appointed attorney.

## IV.    Conclusion

We affirm the trial court's judgment, as modified.


Bailey C. Moseley
Justice


Date Submitted:    August 8, 2016
Date Decided:      November 9, 2016

Publish

24