

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00027-CR

ADRIAN GRISSOM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 55029-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

During an argument, Adrian Grissom grabbed a firearm that his wife, Cyan Winn, exhibited from her purse and shot Winn during a struggle. The grand jury indicted Grissom for murder, and the State alleged he committed the offense by two different manners and means. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Supp.). After a jury trial, the jury found Grissom guilty and assessed a punishment of thirty years in prison. On appeal, Grissom argues that (1) legally sufficient evidence did not prove the culpable mental state of murder, (2) the jury charge allowed for a non-unanimous verdict, and (3) the officer improperly testified at the punishment phase solely from the contents of call notes created by a third party without any independent recollection. Because we find that (1) legally sufficient evidence supported the culpable mental state, (2) a jury is not required to unanimously agree on the manner and means of murder, and (3) assuming error, no harm resulted from the officer's testimony, we affirm the trial court's judgment.

## I.      Factual Background

Grissom's daughter, N.W.,[1] was the only direct witness to testify at trial. N.W. testified that Grissom started yelling at Winn who was "in the living room . . . in the middle of the hallway packing up [their] stuff." N.W. testified that she, Grissom, Winn, and N.W.'s one-year-old sister, A.W.,[2] were the only people in the apartment at that time.

---

[1]We use pseudonyms to refer to the children to protect the identity of the children. *See* TEX. R. APP. P. 9.10; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]A.W. was three years old at the time of trial. She did not testify.

After hearing an "unusual scream," "a scruffle," "a loud bang," and children crying upstairs, the downstairs neighbors called 9-1-1. Officer Timothy Magness with the Longview Police Department (LPD) responded but left after no one answered Grissom's apartment door. About thirty minutes later, Magness was dispatched to the same apartment after Grissom called 9-1-1 and reported a shooting. As Officer Nathaniel Lemmon with the LPD was approaching the apartment, Lemmon made contact with Grissom, who then told Lemmon that he was the shooter.

Grissom testified to the following sequence of events in his own defense at the guilt/innocence phase: He usually got off work at 7:00 a.m., went home, played with N.W., and talked with Winn for a while before falling asleep. Winn woke him up because he was not helping her pack in preparation for their upcoming move. The couple argued, and it continued into the kitchen. Grissom approached Winn while she was seated in a kitchen chair. Winn pulled a firearm out of her purse as she had done several times before. However, because Winn had never pointed a firearm at Grissom, he immediately "flipped her back out of the chair." Grissom took the pistol away from Winn. He "was laying pretty much on [Winn's] back, but [their] arms [we]re extended out, and [he was] reaching and grabbing." Grissom attempted to get up by using Winn's body as leverage, and the firearm accidentally discharged. Immediately after the shooting, Grissom left the apartment with his two daughters and went to the apartment complex's community laundry room.

## II. Legally Sufficient Evidence Supports Grissom's Conviction

In his first point of error, Grissom argues that the evidence was legally insufficient to prove anything other than a reckless state of mind. We disagree. There was sufficient evidence

for a rational jury to find that the State proved, beyond a reasonable doubt, its allegation that Grissom shot Winn with the required mental state.

### A.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 862–63 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witness['s] testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision

when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

We consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, pet. struck) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). We consider all the evidence admitted at trial, even improperly admitted evidence. *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

Legal "sufficiency of the evidence [is] measured by the elements of the offense as defined by [a] hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

**B.    Applicable Law**

"A person acts intentionally . . . with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." TEX. PENAL CODE ANN. § 6.03(a).  "A jury may infer intent [or knowledge] from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime . . . ." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique*, 994 S.W.2d at 649 (Meyers, J., concurring)).  "Intent and knowledge are fact questions for the jury and (absent a confession) are almost always proven by circumstantial evidence." *Yates v. State*, 505 S.W.3d 631, 644 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)).

**C.    Analysis**

The indictment charged Grissom with murder, an offense under Section 19.02 of the Texas Penal Code. *See* TEX. PENAL CODE ANN § 19.02 (Supp.).  Under Section 19.02(b)(1), the State could prove that Grissom (1) "intentionally or knowingly" (2) "cause[d]" (3) "the death of [Winn]." TEX. PENAL CODE ANN § 19.02(b)(1).  Under Section 19.02(b)(2), the State had to prove that Grissom (1) "intend[ed]" (2) "to cause serious bodily injury" and (3) "commit[ed] an act clearly dangerous to human life" (4) "that cause[d] the death of [Winn]." TEX. PENAL CODE ANN. § 19.02(b)(2).  Specifically, Grissom challenges the sufficiency of the evidence of the

culpable mental state by arguing that his actions were only reckless.[3] Because he does not challenge the remaining elements of the offense, we address only the mental-state element.

The evidence allowed the jury to conclude that the State met its burden on the mental-state element under either alleged manner and means. It is undisputed that Grissom shot Winn with a firearm.[4] The medical examiner testified, and Grissom admitted at trial, that the firearm was touching Winn's head when it was discharged, and the bullet went through the "middle" of her brain. The medical examiner, Christopher Geffre, concluded that the cause and manner of Winn's death was homicide due to a gunshot wound to her head. Kelly Clark, a forensic scientist in the firearm section of the Texas Department of Public Safety crime laboratory, testified that firing the weapon required a person to turn off the safety, place a round in the chamber, depress a small button on the trigger, and pull the trigger with a trigger pull of five pounds of pressure. This meant that a person would have to be "somewhat intentional not wanting that trigger to go off to pull it at a 5-pound trigger pull." This evidence lends itself to an inference that Grissom intentionally pulled the trigger at extremely close range while aiming in a direction to maximize the chance that the bullet would kill Winn. *See Jones v. State*, 944 S.W.2d 642, 646–47 (Tex. Crim. App. 1996) ("The bullet entered near the center of the victim's forehead next to his left eyebrow, lacerating the brain and causing his left eye to collapse."

---

[3]Though Grissom admitted that the firearm was in his hand during the scuffle and that the firearm must have been pointed at Winn when it discharged the bullet into the back of her head, Grissom's testimony provided the jury with a contradictory explanation on the issue of whether the firearm "accidentally" discharged. However, the jury's verdict of guilty shows that the jury implicitly rejected Grissom's contention that the shooting was accidental. *See Adanandus v. State*, 866 S.W.2d 210, 216 (Tex. Crim. App. 1993) ("[E]vidence of a struggle does not necessarily negate [a finding] of deliberate conduct.").

[4]"A firearm is a deadly weapon per se." *Rhymes v. State*, 536 S.W.3d 85, 98 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Williams v. State*, 502 S.W.3d 262, 270 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)); *see* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Supp.).

"[T]he evidence shows that the bullet struck the victim practically between the eyes and that appellant had to intentionally pull the trigger for the gun to fire."); *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) ("The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result."); *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981) ("[W]here a deadly weapon is fired at close range and death results[,] the law presumes an intent to kill.").

Moreover, the jury could have inferred guilt based on the following evidence of consciousness of guilt for three reasons. First, immediately after the shooting, Grissom left the apartment with his two children and went to the laundry room. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (explaining that "[e]vidence of flight evinces a consciousness of guilt"); *Hedrick v. State*, 473 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (reiterating that flight shows consciousness of guilt and that "[a] consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt"). Second, Grissom did not call 9-1-1 until thirty minutes after the shooting, causing a substantial delay in possible medical treatment for Winn. *See Martin v. State*, 246 S.W.3d 246, 262 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Third, there was evidence suggesting that Grissom was avoiding law enforcement after the shooting.

To show that Grissom initially avoided law enforcement, the State introduced surveillance footage showing him walking towards the laundry room, with Grissom's mother arriving soon after. The footage showed two police sports-utility vehicles driving around and

8

then heading towards the exit of the apartment complex. Less than one minute later, Grissom's mother appeared from the walkway near the laundry room and put both of Grissom's children in her car. As she was leaving, she said, "I don't see nobody." Seconds later, Grissom appeared and walked back towards his apartment. Grissom then returned to the laundry room approximately twelve minutes later and called 9-1-1. The jury could have properly inferred that Grissom was delaying any interaction with law enforcement to allow time to create a favorable story to tell the police. As a result, the jury could have used this evidence to establish Grissom's guilt.

Based on the totality of the evidence, we conclude that a rational fact-finder could determine, beyond a reasonable doubt, that Grissom had the required mental state under either manner and means when the firearm was discharged. As a result, we find the evidence legally sufficient to support the finding of guilt. We overrule Grissom's first point of error.

### III. The Jury Charge Did Not Permit a Non-unanimous Verdict

In Grissom's second point of error, Grissom argues that the jury charge allowed for a non-unanimous verdict because the application section of the jury charge included two manner and means under Section 19.02 of the Texas Penal Code.

#### A. Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred . . . ." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

9

**B.     Analysis**

"A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense." TEX. CODE CRIM. PROC. ANN. art. 21.24(b). The Texas Court of Criminal Appeals "has held that alternate pleading of the differing methods of committing one offense may be charged in one indictment." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Under Section 19.02(b), each manner and means describes different ways of committing the same offense of murder involving one victim. *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g); *Gilbert v. State*, 575 S.W.3d 848, 868 (Tex. App.—Texarkana 2019, pet. ref'd). When two or more manner and means are alleged under one count in an indictment, the jury is not required to agree on the manner and means by which the defendant committed the murder. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *Aguirre*, 732 S.W.2d at 326. Because the trial court did not err by not requiring the jury to be unanimous on the manner and means, we overrule Grissom's second point of error.

**IV.     Grissom Was Unharmed by Any Assumed Error Based on Officer Powell's Punishment Testimony from a Third-Party Report**

During the punishment phase, Officer Olivia Powell with the LPD testified about a domestic incident between Winn and Grissom that occurred more than two years prior to the murder.[5] On July 28, 2019, Powell was dispatched to speak with Winn about a threat Grissom made against her. Powell spoke with Winn but did not state at trial what Winn said to her.

---

[5]Prior to Powell testifying at the punishment phase, Grissom requested a hearing outside the presence of the jury. The testimony admitted at trial and at the hearing was similar.

10

Powell did not create an offense report or make an arrest. On cross-examination, Powell admitted that she was referring to a "call sheet" that she did not prepare and that she did not have independent knowledge of any facts related to her being dispatched to speak with Winn. At trial, Grissom objected to (1) relevance and (2) hearsay and (3) argued that Powell's testimony was not a present-sense impression since she was testifying from a third party's report without independent knowledge. The trial court allowed Powell's testimony because Grissom opened the door through witnesses at the guilt/innocence phase and because "[Powell was] not testifying as to what somebody else said."

"Hearsay is a statement . . . other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Richter v. State*, 482 S.W.3d 288, 299–300 (Tex. App.—Texarkana 2015, no pet.) (quoting *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (citing TEX. R. EVID. 801(d))). "An extrajudicial statement or writing, which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Id.* at 300 (quoting *Dinkins*, 894 S.W.2d at 347).[6] The erroneous admission of hearsay testimony is non-constitutional error and is disregarded unless the defendant's substantial rights were affected. *See* TEX. R. APP. P. 44.2(b); *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). "An error does not affect substantial rights if the appellate court has 'a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect.'" *Macedo*, 629

---

[6]The State does not make any argument with corresponding citations to authority showing why Powell's testimony was not hearsay or why her testimony would qualify under any hearsay exception.

11

S.W.3d at 240 (quoting *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)). The

court in *Gonzalez v. State* stated:

> In making this determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error.

*Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

Assuming error, we find that Grissom was not harmed by Powell's testimony. Powell's

testimony was not specific about the gravity of the threat, did not provide any other details, and

did not relay any other statements made by Winn. There was no context provided to the jury.

But, since Powell stated that no report was made and no arrest was made, that mitigated the jury

from concluding that the threat was major or that Grissom acted upon that threat. *See Anderson

v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (to show harm, excluded evidence must

be controlling on material issue and not cumulative of other evidence).

The nature of all the evidence supporting the verdict was not detrimental to Grissom.

Powell was the first witness at the punishment phase, and her testimony was not emphasized and

was quick. Other extraneous offenses had similar elements to the facts here such as "[Grissom]

was holding Winn down on the ground to get away from her" and another that involved yelling

and screaming. During the guilt/innocence phase, Grissom had already put on evidence that

Winn was the aggressor by hitting him at his work and "throw[ing] tools around and stuff like

that." None of the testimony from either side was more egregious than the other.

The only contested issue was Grissom's mental state. As discussed above, the evidence was strong in favor of guilt, including the evidence showing Grissom's mental state. At punishment, the State only added the other extraneous offense and limited victim-impact evidence from Winn's family members.

The State did not emphasize Powell's testimony. During closing arguments at punishment, the State vaguely referred to the "control" that Grissom had over Winn that inferred past domestic violence. Even those statements were not long and did not emphasize any previous domestic violence in general.

In light of the jury's assessment of punishment at the low end of the applicable range, and considering all the evidence, including the surveillance footage of Grissom after the shooting, the gravity of the injury inflicted upon Winn when Grissom shot her in the head, and Grissom's lack of prior criminal history, we have a fair assurance that any error did not affect Grissom's substantial rights or had but a slight effect. *See Macedo*, 629 S.W.3d at 240. As a result, we overrule Grissom's third point of error. *See* TEX. R. APP. P. 44.2(b).

## V.     Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     September 26, 2024
Date Decided:      October 25, 2024

Do Not Publish

13