

# NUMBER 13-22-00171-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUSTIN DAVID LOPEZ,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 24th District Court
### of Jackson County, Texas.

# OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Opinion by Justice Longoria**

Appellant Justin David Lopez was found guilty by a jury for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02. The jury sentenced appellant to life imprisonment. By five issues which we reorganize and re-number as four, appellant claims that (1) the evidence was legally and factually insufficient to support his conviction;

(2) he was denied his right to due process and right to a jury trial because the verdict was not unanimous; (3) the trial court abused its discretion in denying his motion to reduce bail; and (4) his trial counsel provided ineffective assistance. We affirm.

## I.    FACTUAL BACKGROUND

The evidence at trial demonstrated that around midnight on November 4, 2019, Jacob Hernandez slowly drove his father's gray Ford truck, with Monica Luna, down Ward Street in Edna, Texas. The truck's windows were fully open and loud music played as Jacob stopped the truck in front of Jose David Lopez Jr.'s[1] residence. At the time, Jose was drinking beer in his front yard with others. Jose approached the truck and an altercation ensued. Jacob and Jose yelled profanities at each other, spat at each other, and threw items at each other before Jacob drove away.

In the early morning hours of November 5, 2019, Angel Lozano had phone conversations with Jose. According to Lozano, Jose wished to fist fight Jacob at his home. According to Jose, it was Jacob who wished to fight.

Subsequently, Lozano, Jacob, Jacob's brother Eric Hernandez, Sabas Reynaldo Mosqueda, James Andrew Guerra, and Isaac Andre Ybarra gathered in Eric's red Nissan truck; Lozano drove to Jose's home. After Lozano parked in front of Jose's driveway, Ybarra exited Eric's truck and walked towards Jose. The others in the truck also exited. Shortly after, appellant ran up to Ybarra, pointed a firearm within inches of his face, then shot Ybarra. Ybarra fell to the ground. According to Lozano, appellant pointed his gun at him and Mosqueda and stated, "Y'all want some, too." According to Mosqueda, appellant

---

[1] The record demonstrates that Jose is appellant's brother.

2

stated, "You bitch ass want some[,] too." Immediately thereafter, Lozano, Jacob, and Eric got back into Eric's truck and drove away. At the same time, Mosqueda and Guerra ran away from Jose's residence on foot. According to Mosqueda, appellant thereafter got into a car and drove off.

Officer Stacy Cavazos of the Edna Police Department and Deputy Jorge Franco of the Jackson County Sheriff's Department simultaneously arrived at Jose's residence around 1 a.m. Franco secured the scene while Cavazos attended to Ybarra, who had a gunshot wound on his face originating at his left eye. Ybarra was non-responsive, and an ambulance arrived minutes later. Cavazos took photos of Ybarra, which were admitted into evidence. The photos depict Ybarra as he lay face-up on the road in front of Jose's residence, his head resting in a pool of blood. Ybarra was later pronounced dead by a justice of the peace.

Appellant was not present at the scene when police arrived. Police did not find a firearm or spent ammunition casings at the scene or inside Jose's home.[2] An autopsy of Ybarra was performed by a Travis County medical examiner. According to the medical examiner, Ybarra's death was a homicide, and the cause of death was a gunshot wound in his left upper eyelid.

Lozano testified that he saw appellant's face the night of the shooting and knew him only as 'Justo' and that he picked 'Justo' out of a photo array provided by Texas Ranger John Lingle. Likewise, Lingle testified that he made a note in the photo array provided to Lozano that indicated he was "90-percent certain that [appellant] was the

---

[2] The evidence demonstrated that police were provided consent to search Lopez's home.

3

person that [Lozano] had witnessed shoot Isaac Ybarra." The photo array was admitted into evidence at trial. Further, Lozano made an in-court identification of appellant as the shooter. In his testimony, Mosqueda identified appellant as the shooter and stated that he recognized appellant's voice when appellant spoke after shooting Ybarra. A warrant for appellant's arrest was filed on November 6, 2019. According to Lingle, appellant was arrested by US Marshalls in Laredo, Texas on January 10, 2020.

## II.    PROCEDURAL BACKGROUND

Appellant was indicted for one count of murder, three counts of aggravated assault, and one count of manslaughter. The murder count contained six paragraphs alleging six alternate manner and means in committing the offense. The indictment also alleged that appellant was a habitual offender based on four prior felony convictions: aggravated assault of a deadly weapon, judgment rendered on January 6, 1998; aggravated assault with a deadly weapon; possession of a prohibited substance in a correctional facility; and tampering with physical evidence, all judgments rendered on November 30, 2010. *See* TEX. PENAL CODE ANN. § 12.42(d) (setting punishment range at imprisonment for twenty-five to ninety-nine years or life for habitual offenders with two prior felony convictions). Prior to voir dire, the State abandoned three of the alternative manner and means of the murder charge, all three counts of aggravated assault, and the manslaughter charge.

Appellant was tried for one count of murder, consisting of three alternate manner and means under the indictment: (1) intentional murder, Count 1 paragraph 1, *see id.* § 19.02(b)(1); (2) committing an act clearly dangerous to human life with intent to cause seriously bodily injury, Count 1 paragraph 2, *see id.* § 19.02(b)(2); and (3) felony murder,

4

Count 1 paragraph 5, *see id.* § 19.02(b)(3). Specifically, the indictment alleged in relevant part as follows:

> . . . [Appellant] . . . did then and there
>
> COUNT 1
> Paragraph 1 (Murder Intending Death)
>
> intentionally or knowingly cause the death of an individual, namely Isaac Andre Ybarra, by shooting the said Isaac Andre Ybarra with a firearm.
>
> Paragraph 2 (Murder Intending SBI)
>
> . . . [Appellant,] did then and there with intent to cause serious bodily injury to an individual, namely, Isaac Andre Ybarra, commit an act clearly dangerous to human life, to-wit: by shooting the said Isaac Andre Ybarra with a firearm, thereby causing the death of the said Isaac Andre Ybarra.
>
> . . . .
>
> Paragraph 5 ([Felony Murder]—Agg. Assault Threaten DW)
>
> . . . [Appellant,] did then and there commit an act clearly dangerous to human life, to-wit: shooting Isaac Andre Ybarra with a firearm, that caused the death of the said Isaac Andre Ybarra, and the defendant was then and there in the course of intentionally or knowingly committing or attempting to commit a felony, to-wit: Aggravated Assault with a Deadly Weapon:
>
> 1. By intentionally and knowingly threatening another, namely Isaac Andre Ybarra, with imminent bodily injury by pointing a firearm in the direction of the said Isaac Andre Ybarra, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault; or
>
> 2. By intentionally and knowingly threatening another, namely Isaac Andre Ybarra, with imminent bodily injury by threatening to shoot the said Isaac Andre Ybarra, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault
>
> Further, the death of Isaac Andre Ybarra was caused while the defendant was in the course of and in furtherance or [(SIC)], or in immediate

5

flight from, the commission or attempt to commit the felony of Aggravated Assault with a Deadly Weapon.

Each paragraph in the indictment tracked the statutory language contained in the relevant subsections of the murder statute. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), (b)(2), (b)(3). The trial court's charge permitted the jury to find appellant guilty of murder if it found beyond a reasonable doubt he committed murder by one of the three alternate means as charged in the indictment and not abandoned by the State. The jury returned a general verdict finding that appellant was "'Guilty' of the offense of the Murder of Isaac Andre Ybarra as alleged in Count 1, paragraphs 1, 2, or 5 of the indictment."

During the punishment phase, the jury found the habitual offender enhancement allegations true and sentenced appellant to life imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice. *See id.* § 12.42(d). This appeal followed.

## III. SUFFICIENCY

In his first issue, appellant argues that the evidence was legally and factually insufficient to support his murder conviction. The Texas Court of Criminal Appeals has held that only one standard should be used to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *Brooks v. State*, 323 S.W.3d 893, 905–07 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we will apply the legal-sufficiency standard when addressing appellant's legal-sufficiency and factual-sufficiency arguments. *Id.*

### A. Standard of Review & Applicable Law

"In reviewing the sufficiency of the evidence to support a conviction, we consider

6

the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing TEX. CODE CRIM. PROC. ANN. art. 38.04).

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240).

A person commits murder (1) if he intentionally or knowingly causes the death of an individual, *see* TEX. PENAL CODE ANN. § 19.02(b)(1); or (2) if he intends to cause

7

serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, *see id.* § 19.02(b)(2); or (3) if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. *See id.* § 19.02(b)(3).

A person acts intentionally with respect to a result of his conduct or nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id*. § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. *Id*. § 6.03(b).

"A jury may infer intent or knowledge from any facts which tend to prove its existence, including the acts, words, conduct of the accused, and the method of committing the crime." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (cleaned up). "Intent and knowledge are fact questions for the jury and (absent a confession) are almost always proven through evidence of the circumstances surrounding the crime." *Yates v. State*, 505 S.W.3d 631, 644 (Tex. App.—Texarkana, 2016 no pet.) (citing *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)). "The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Vuong v. State*, 830 S.W.2d 929, 934 (Tex. Crim. App. 1992). Intent to kill may also be inferred from the nature and

8

extent of the injuries inflicted on the victim. *See Felder v. State*, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992) (holding that the intent to kill could be inferred from location and depth of a stab wound). A jury may also infer knowledge from such evidence. *See Hart*, 89 S.W.3d at 64.

## B.    Discussion

In his brief, appellant solely contends that no evidence supports the felony-murder allegation submitted under § 19.02(b)(3). [3] The State does not dispute appellant's contention. Rather, the State asserts that appellant failed to raise a sufficiency of the evidence challenge to the alternate theories of § 19.02(b)(1) intentional murder and § 19.01(b)(2) intent to cause serious bodily injury murder. Further, the State argues that if there is sufficient evidence to support a conviction for intentional murder, review of evidence to support felony murder is unnecessary.

The Texas Court of Criminal Appeals has addressed a similar insufficient evidence argument. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding in a capital murder case involving alternate theories, "the State need prove only one of the underlying offenses charged in the indictment in order to support the conviction"). When reviewing the insufficient evidence claim, the Court in *Kitchens* emphasized the fact that the appellant had not challenged the sufficiency of the evidence supporting his conviction under an alternative theory of guilt, and observed, "it is settled that 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the

---

[3] In his brief, appellant proclaims that "No evidence presented at trial that [appellant] was attempting to commit Aggravated Assault with a Deadly Weapon[,]" and "every bit of evidence presented, and argument, was that this was an intentional and willful act of murder."

verdict stands if the evidence is sufficient with respect to *any* of the acts charged.'" *Kitchens*, 823 S.W.2d at 259 (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)) (emphasis added). The Court then overruled the insufficiency claim "[b]ecause appellant does not contest the sufficiency of the evidence to prove [the alternate capital murder allegation]." *Id.*

After *Kitchens*, the Court, in other contexts, has reiterated the rule that in homicide offenses, "different legal theories involving the same victim are simply alternate methods of committing the same offense . . . whether they are found in the same or different [statutory] subsections, so long as the same victim is alleged for the predicate murder[.]" *Gamboa v. State*, 296 S.W.3d 574, 583–84 (Tex. Crim. App. 2009). And "when a general verdict is returned and the evidence is sufficient to support a finding under *any* of the paragraphs submitted, the verdict will be applied to the paragraph finding support in the facts." *Manrique v. State*, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999) (emphasis added) (citing *Aguirre v. State*, 732 S.W.2d 320 (Tex. Crim. App. 1987)).

Here, the evidence demonstrated that appellant shot and killed Ybarra with a firearm. Two eyewitnesses—Lozano and Mosqueda—identified appellant as the shooter. In particular, Lozano testified he recognized appellant's face during the shooting and identified appellant as the shooter when provided a photo array by Lingle. Mosqueda testified appellant was the shooter and stated that he recognized appellant's voice when appellant spoke after the shooting. The autopsy confirmed that Ybarra's death was a homicide, specifically caused by a gunshot wound to his left eye. The jury could have found that appellant intended to cause the death of Ybarra or to cause Ybarra serious

10

bodily injury. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2); *see also Hart*, 89 S.W.3d at 64; *Vuong*, 830 S.W.2d at 934; *Felder*, 848 S.W.2d at 90. In addition, appellant left the scene prior to the arrival of police or the ambulance, which is also suggestive of guilt. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (explaining that evidence of flight evinces consciousness of guilt); *Hedrick v. State*, 473 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (reiterating that flight shows consciousness of guilt and that "[a] consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt."). From this evidence, a jury could reasonably infer an intent to kill or that appellant committed an act clearly dangerous to human life with intent to cause bodily injury. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2).

Again, appellant solely challenges the legal sufficiency of the evidence for the felony-murder allegation submitted under § 19.02(b)(3) and not the other alternative theories submitted under § 19.02(b)(1)–(2). Because appellant does not challenge the legal sufficiency of the evidence proving he caused Ybarra's death by intentionally doing so, or by committing an act clearly dangerous to human life with intent to cause serious bodily injury, and we find there was sufficient evidence to support his conviction under either of these theories, his legal insufficiency claim fails. *See Gamboa*, 296 S.W.3d at 583-84; *Manrique*, 994 S.W.2d at 642; *Kitchens*, 823 S.W.2d at 259. We overrule appellant's first issue.

### IV.    JURY UNANIMITY

In his second issue, appellant argues he was denied due process and right to a jury trial because the verdict was not unanimous. Specifically, appellant points out that

11

the *mens rea* differs between the three theories of murder as charged in the indictment and argues that the jury charge should have required the jury to unanimously agree on his *mens rea* for murder.

Jury unanimity is required in all criminal cases. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011). Simply put, "the jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Id.* Murder is a result of conduct offense. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). "If the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types of results are considered to be separate offenses, but different types of conduct are not." *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008).

Various courts of appeals have rejected the argument that sections 19.02(b)(1), 19.02(b)(2), and 19.02(b)(3) constitute three separate offenses. *See Diko v. State*, 488 S.W.3d 855, 859–60 (Tex. App.—Fort Worth 2016, pet. ref'd) ("This court, on three previous occasions, has rejected the argument . . . that sections 19.02(b)(1) and 19.02(b)(2) constitute two separate offenses . . . ."); *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Both the indictment and the jury charge indicate that the only offense involved in this case was murder by any of the three methods set forth in the Penal Code . . . . The jury was not required to agree unanimously as to the manner and means by which appellant did so."); *London v. State*, 325 S.W.3d 197, 206–07 (Tex. App.—Dallas 2008, pet. ref'd) ("We reject appellant's argument that the jury charge alleged two separate statutory offenses of murder . . .").

12

Appellant's argument that the differing mental states set forth in each subsection of the murder statute requires jury unanimity has also been rejected. As previously set out above, although the conduct is distinctly different, the three methods of committing murder set forth in the statute are different manners and means of committing the same offense, not distinct and separate offenses. *Gandy v. State*, 222 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Aguirre*, 732 S.W.2d at 325–26 (holding that when indictment contained two paragraphs, the first alleging murder under § 19.02(b)(1) and the second alleging murder under § 19.02(b)(3), the allegations were merely two different manners and means of committing same offense). "Where the legislature has specified that any of several different mental states will satisfy the intent or *mens rea* element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proved the intent element beyond a reasonable doubt." *Davis v. State*, 268 S.W.3d 683, 712 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006)); *see also Bundy v. State*, 280 S.W.3d 425, 431–32 (Tex. App.—Fort Worth 2009, pet. ref'd); *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). That is, the jury did not need to unanimously agree on the preliminary factual issue of appellant's mental state as long as it agreed on the bottom line—he murdered Ybarra. *See Davis*, 268 S.W.3d at 712; *see also Aguirre*, 732 S.W.3d at 326.

Accordingly, we conclude there was no error in the jury charge as claimed by appellant. We overrule appellant's second issue.

## V.   BAIL REDUCTION

In his third issue, appellant argues that the trial court abused its discretion in denying his motion to reduce bail.

Prior to trial, on August 27, 2020, appellant filed his "Application for Writ of Habeas Corpus Motion to Release Defendant on Reduced Bond," requesting the trial court reduce his bail. The trial court denied appellant's requested relief on September 30, 2020. Subsequently, appellant was convicted of the underlying offense, and the trial court rendered judgment and sentenced him to life imprisonment.

A defendant may file a pretrial writ of habeas corpus seeking bail reduction or release on personal recognizance bond. TEX. CODE CRIM. PROC. ANN. arts. 11.24, 17.151. However, "where the premise of a habeas corpus application is destroyed by subsequent developments, the legal issues raised thereunder are rendered moot." *Bennet v. State*, 818 S.W.2d 199, 200 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (quoting *Saucedo v. State*, 795 S.W.2d 8, 9 (Tex. App.—Houston [14th Dist.] 1990, no pet.)). An appeal from the denial of a pretrial writ of habeas corpus seeking bail reduction is rendered moot if the defendant is tried and convicted. *Ex parte Tucker*, 3 S.W.3d 576, 576 (Tex. Crim. App. 1999) ("The appellant having been tried during the pendency of this appeal, the question of his pre-trial bond is moot."); *Martinez v. State,* 826 S.W.2d 620, 620 (Tex. Crim. App. 1992) (holding that appeal of denial of pretrial bond is rendered moot by defendant's conviction); *Philips v. State*, No. 10-09-00103-CR, 2009 WL 2264368, *1 (Tex. App.—Waco July 29, 2009 no pet.) (mem. op., not designated for publication) ("Issues concerning pretrial bail are moot after the accused is convicted.") (citing *Oldham*

14

*v. State*, 5 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)).

Because appellant has been convicted of the underlying offense and is no longer subject to pretrial confinement, his issue regarding the denial of his application for a pretrial writ of habeas corpus seeking bail reduction is moot. *See Ex parte Tucker*, 3 S.W.3d at 576; *Martinez*, 826 S.W.2d at 620; *Philips*, 2009 WL 2264368, at *1. There is no action this Court can now make regarding the trial court's decision on the amount of the bail that will cause any effect. We overrule appellant's third issue.

## VI.  INEFFECTIVE ASSISTANCE

In his fourth issue, appellant argues his counsel was ineffective in (1) failing to file a motion to quash the indictment, (2) failing to preserve error regarding jury charge error, and (3) filing a defective recusal motion.

### A.  Standard of Review & Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington. Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that (1) counsel's performance was deficient and (2) but for the deficient performance the result of the proceeding would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

15

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (explaining that "unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate"). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. To prove that trial counsel rendered ineffective assistance, the defendant must show counsel's performance was substandard; that is, counsel has made errors so grave that counsel did not function as guaranteed to the defendant under the Sixth Amendment. *Strickland*, 466 U.S. at 687. Or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Id.*

An allegation of ineffectiveness must be "firmly founded in the record," and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813–14); "[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*." *Thompson*, 9 S.W.3d at 814 n.6.

16

"[W]e must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment." *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (cleaned up) (concluding that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient").

The proper measure of the first prong, attorney performance, is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. The guarantees of the Sixth Amendment rely on the legal profession's maintenance of professional norms. *Id.* Although no set of rules can satisfactorily take account of the multitude of circumstances and choices a defense counsel should make when representing a criminal defendant, representing a defendant entails certain basic duties like counsel having "to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

Even if professionally unreasonable, an error does not warrant setting aside the judgment if there has been no prejudicial effect on the outcome. *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Therefore, the court should consider whether the factfinder would have had reasonable doubt in respect to guilt, absent counsel's error. *Id.* at 695. In considering this question, a court adjudicating an ineffectiveness claim must consider the totality of the evidence. *Id.* at 695. Some errors might be trivial in comparison to the facts, and other errors might have a pervasive effect.

17

*Id.* at 695, 696.

## B.    Counsel's Failure to File a Motion to Quash the Indictment

Appellant contends that his trial counsel was ineffective for failing to quash the indictment. In his brief, appellant argues that counsel admitted to being aware of the defect in the indictment and did nothing to cure the defect. However, appellant does not explain the alleged defects of the indictment,[4] does not provide citations to the record showing an admission by trial counsel as to his knowledge of any alleged defects in the indictment, and does not provide pertinent legal authority related to the issue. *See* TEX. R. APP. P. 38.1(i) ("[A] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Therefore, appellant has waived this sub-issue through inadequate briefing. *See id.*; *Wolfe v. State*, 509 S.W.3d 325, 342–43 (Tex. Crim. App. 2017) (noting that we have no obligation to make an appellant's argument for him); *Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011) (finding a point of error inadequately briefed where the brief contains a single-sentence assertion and is unaccompanied by any other argument or authorities).

## C.    Counsel's Failure to Preserve Jury Charge Error

Appellant contends that his trial counsel was ineffective for failing to preserve errors in the jury charge. We construe appellant's reference to "errors in the charge" as relating to his claim that the jury charge should have required the jury to unanimously agree on his *mens rea* for murder as raised in his second issue. Having addressed

---

[4] Appellant cites to a portion of the record relating to an exchange between trial counsel and the trial court regarding the proposed jury charge as it was presented at that time. Appellant does not otherwise explain how this exchange relates to any defects of the amended indictment. *See* TEX. R. APP. P. 38.1(i).

18

appellant's unanimity claim and finding no error in the charge, we likewise find that appellant has failed to demonstrate that his trial counsel was deficient in failing to object to the jury charge on the same basis. *See Strickland*, 466 U.S. at 687; *see also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) ("Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective."); *Thompson*, 9 S.W.3d at 812. We overrule this sub-issue.

## D.    Counsel's Failure to File a Proper Recusal Motion

Appellant contends that his trial counsel was ineffective for failing to file a proper recusal motion that was timely, verified, and set forth grounds for recusal.

Texas Rule of Civil Procedure 18b provides multiple grounds for recusal of a judge. *See* TEX. R. CIV. P. 18b(b); *see also De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) ("The procedures for recusal of judges set out in Rule 18a of the Texas Rules of Civil Procedure apply in criminal cases."). Potentially relevant to this case, rule 18b provides, among other things, that a judge must recuse himself in any proceeding which: (1) the judge's impartiality might be reasonably questioned and (2) the judge has a personal bias or prejudice concerning the subject matter or a party. *See id.* 18b(b)(1)–(2). Rule 18a provides that a motion to recuse "must be verified," "must assert one or more of the grounds listed in Rule 18b," and "must not be based solely on the judge's rulings in the case." *Id.* R. 18a(a)(1)–(3). In addition, a motion to recuse must state "with detail and particularity facts that[ ]are within the affiant's personal knowledge, except that facts may be stated on information and belief if the basis for that belief is specifically stated,]" "would be admissible in evidence,]" and "if proven, would be sufficient to justify recusal." *Id.* R.

19

18a(a)(4)(A)–(C).

"A motion to recuse must be filed as soon as practicable after the movant knows of the ground stated in the motion." *Id*. R. 18a(b)(1)(A). In addition, the motion must not be filed "after the tenth day before the date set for trial or other hearing unless, before that day, the movant neither knew nor reasonably should have known" "that the judge whose recusal is sought would preside at the trial or hearing" or "that the ground stated in the motion existed." *Id.* R. 18a(b)(1)(B)(i)–(ii).

The record demonstrates that on March 16, 2022, appellant's trial counsel filed a motion to recuse the Honorable Judge Robert Bell, five days before commencement of trial on March 21, 2022. In the recusal motion, appellant asserted the following:

> [Appellant] has been a long time resident in Calhoun County and had been arrested several times in the past. At the time he was being prosecuted, Judge Robert Bell was then the District Attorney who handled the prosecution of all cases against [appellant]. During that time, [appellant] recalls that then DA Bell had stated to him that if he saw him in the court room again, he would seek to give him 25 years to life. While this statement was made with the intent to have the [appellant] stay out of trouble, the [appellant] believes that it would be prejudicial if Judge Bell oversaw the current case at hand. [Appellant] understands that Judge Bell is not responsible for deciding guilt or innocence, but he is respectfully filing this motion due to his beliefs.

The recusal motion was not verified. On March 17, 2022, the State filed a response to appellant's recusal motion and asserted that "Judge Bell served as the elected Criminal District Attorney for Jackson County from January 1993 until August 2016," and "retained control over and familiarity with all felonies serving as lead counsel." The State's response also listed all of appellant's prior final felony convictions out of Jackson County, the judgments of which were rendered between 1998 and 2010. However, the State's

response did not contest that Judge Bell made the statement appellant alleged in his recusal motion.

On March 18, 2022, the Honorable Judge Bell signed his "Order Opposing Motion to Recuse," by which he informed the parties he was opposing appellant's recusal motion and requesting the administrative judge to rule on appellant's recusal motion. Subsequently on the same day, the Honorable Judge Sid L. Harle, presiding judge of the Fourth Administrative Judicial Region, signed an order denying appellant's motion to recuse stating that appellant's recusal "[m]otion is denied without a hearing pursuant to Rule 18a TRCP since it is untimely, does not state a basis for recusal, and is unverified."

On appeal, appellant urges that "[i]t was fully within defense counsel's ability to verify [the recusal] motion" and argues that evidence in the record "demonstrate[s] that defense counsel was aware of this issue over ten days prior to trial, as he conferred with the State regarding it." Appellant also argues that his counsel failed to set forth any grounds for recusal, and that the motion's assertions implicate grounds of recusal as provided in Texas Rule of Civil Procedure 18b(1), (2). Appellant then concludes, without analysis, that the result of his proceeding may have been different if the motion were filed appropriately.

"To establish ineffective assistance of counsel, appellant must demonstrate that the trial court would have erred in denying a properly filed written motion." *Richardson v. State*, 606 S.W.3d 375, 384 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd); *see also Vaughn v. State*, 888 S.W.2d 62, 74 (Tex. App.—Houston [1st Dist.] 1994) *aff'd*, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996) (holding that to prove ineffectiveness for failure

21

to object, defendant must demonstrate that the trial court would have erred in overruling the objection). "It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Appellant did not file a motion for new trial on ineffective assistance grounds. Thus, the record provides no explanation of the motivation behind counsel's decision to file the motion to recuse in the manner he did. Nor is there evidence in the record regarding the complained-of statement by the trial judge as alleged in appellant's motion to recuse.[5] We cannot determine on this silent record whether the trial court would have erred had it denied a proper recusal motion that was timely, verified, and set forth grounds for recusal. *See Thompson*, 9 S.W.3d at 814 n.6.; *Menefield*, 363 S.W.3d at 592–93 (explaining that direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim) (citing *Goodspeed*, 187 S.W.3d at 392).

As such, appellant has not shown a reasonable probability that the result of the proceedings would have been different had his trial counsel filed a timely and verified motion to recuse that set forth grounds for recusal. *See Strickland*, 466 U.S. at 687; *see also Lopez*, 343 S.W.3d at 142; *Thompson*, 9 S.W.3d at 812. We overrule this sub-issue and the entirety of appellant's fourth issue.

---

[5] We note that motions and pleadings are not evidence. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 539–40 (Tex. 2016).

## VII. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
6th day of July, 2023.